United States District Court
Southern District of Texas

**ENTERED**
November 12, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. 2:25-CR-135 |
| | § | |
| VICTORIANO SALMERON | § | |

## <u>ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS AND MOTION TO DISMISS</u>

Victoriano Salmeron ("Defendant") is charged in a one count indictment with illegal reentry into the United States in violation of 8 U.S.C. § 1326(a). D.E. 6. Before the Court is Defendant's motion to suppress evidence of prior removals and motion to dismiss the indictment (D.E. 23) and the Government's response (D.E. 26). The Court held an evidentiary hearing on September 24, 2025, where both parties presented evidence and arguments. The Court received supplemental briefing from Defendant on October 31, 2025. D.E. 32. For the reasons set out below, the Court **GRANTS** Defendant's motion to suppress and to dismiss. Accordingly, the evidence of prior removals is **SUPPRESSED** and the indictment is **DISMISSED**.

## BACKGROUND

For the most part, the facts set out in Defendant's motion and those he testified to at the hearing are uncontroverted. The Court therefore accepts the following as true. Defendant was born in and is a citizen of El Salvador. He initially entered the United States in 1986, when he was seventeen years old. Soon after he arrived, he applied for asylum,

but that application was denied. Over ten years later, in 1997, Defendant was convicted of two nonaggravated felonies, possession of a controlled substance and possession of a forged instrument. And in 2000, he was convicted of a misdemeanor, making a false statement to a peace officer.

In 2003, Defendant consulted with an immigration attorney and applied for legal status under the Nicaraguan Adjustment and Central American Relief Act (NACARA). In 2008, he applied for temporary protected status and again for asylum, which were both denied.

In September 2008, Defendant received a notice to appear in immigration court for removal proceedings. D.E. 26-2. At this first hearing, on December 9, 2008, Defendant appeared but his attorney did not. Because his attorney was not there, the immigration judge rescheduled the hearing to April 28, 2009, confirmed by a notice of hearing sent to Defendant. D.E. 26-3. Once again, at the second hearing, Defendant appeared but his attorney did not. According to Defendant, the immigration judge told him that they would send him a notice with a new hearing date. He never received that notice. And the Government has been unable to locate such notice.

On August 27, 2009, the immigration judge ordered Defendant removed in absentia. D.E. 26-1. Defendant first learned of the removal order entered against him when immigration authorities arrested him in February 2010. After his arrest, he was held in Maryland for seven days, in Pennsylvania for three weeks, in Louisiana for three days, and then he was deported in April 2010. During this time, Defendant testified that he only had

one opportunity to speak with someone—a two-minute phone call with his sister. He was not given an opportunity to contact an immigration attorney.

Defendant has returned to the United States and been removed at least six times since his initial removal. D.E. 26, pp. 3-4. For each subsequent removal, his original removal order was reinstated. *Id.* He has also pled guilty to three § 1326 violations for illegal reentry. He is now again charged with illegal reentry after entering the United States in January 2025.

## DISCUSSION

### I. Notice to Appear

The parties dispute whether Defendant received a notice to appear for the August 27, 2009 hearing at which he was ordered removed in absentia. Defendant testified that he never received a notice for this hearing. And a notice to appear for this hearing has not been produced by the Government. The Government confirmed that it has not been able to locate such notice. However, it points to the language of Defendant's removal order as proof that he was provided notice.

The removal order states, in part: "Jurisdiction was established in this matter by the filing of the Notice to Appear issued by the Department of Homeland Security, with the Executive Office for Immigration Review and by service upon the respondent." D.E. 26-1 (citing 8 C.F.R. § 1003.14(a)). The Government contends that it is entitled to rely on this language in the removal order to show that a notice to appear was served on Defendant. However, there is no evidence that a hearing notice was issued or served on Defendant for

3 / 12

this hearing, whereas there is evidence that a notice was provided to Defendant for the two prior hearings.

Considering the evidence before the Court, the Court finds that Defendant was not served with notice for the August 27, 2009 hearing. The Court notes that on two previous occasions, Defendant received hearing notices and attended each of those hearings. The Court proceeds to address Defendant's challenge to the validity of the removal order under 8 U.S.C. § 1326(d).

## II.  8 U.S.C. § 1326(d)

The statute, 8 U.S.C. § 1326(a), makes it illegal for any alien who "has been denied admission, excluded, deported, or removed" to enter or attempt to enter the United States without authorization to do so. Therefore, the offense of illegal reentry requires proof of a prior order of exclusion, removal, or deportation. Defendants facing a charge of illegal reentry can challenge the original removal order through a collateral attack under § 1326(d). *See United States v. Palomar-Santiago*, 593 U.S. 321, 324 (2021). Section 1326(d) provides:

> In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) or subsection (b) unless the alien demonstrates that—
>
> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and

(3) the entry of the order was fundamentally unfair.

In the Fifth Circuit, a defendant must also show prejudice, which means there "was a reasonable likelihood that but for the errors complained of the defendant would not have been deported." *United States v. Ramirez-Cortinas*, 945 F.3d 286, 291 (5th Cir. 2019) (quoting *United States v. Benitez-Villafuerte*, 186 F.3d 651, 658 (5th Cir. 1999)). The Court addresses each of the requirements below.

## A. Exhaustion of Administrative Remedies

Defendant argues that his failure to exhaust administrative remedies can be excused because no remedies were available to him at the time of his removal. D.E. 23, p. 5 (citing *United States v. Villanueva-Diaz*, 634 F.3d 844, 849 (5th Cir. 2011)). He states that a direct appeal is unavailable where a noncitizen is ordered deported in absentia, as Defendant was. D.E. 23, p. 5 (quoting 8 C.F.R. § 1240.15 ("[A]n appeal shall lie from a decision of an Immigration Judge to the Board, except that no appeal shall lie from an order of deportation entered in absentia.")). Further, a noncitizen who reenters the country unlawfully after having been deported, as Defendant did, cannot move to reopen the prior removal order. D.E. 23, p. 5 (citing 8 U.S.C. § 1231(a)(5)).

The Government argues that Defendant had opportunities to challenge his removal order prior to being initially removed and during subsequent removal and § 1326 proceedings. D.E. 26, p. 4. Additionally, Defendant should not be allowed to benefit from illegally reentering the United States which precluded him from certain remedies. *Id*. at pp. 4-5 (citing *Martinez v. Johnson*, 740 F.3d 1040 (5th Cir. 2014)).

5 / 12

"An alien exhausts administrative remedies by raising an issue 'either on direct appeal or in a motion to reopen' before the BIA [Board of Immigration Appeals]." *United States v. Parrales-Guzman*, 922 F.3d 706, 707 (5th Cir. 2019) (quoting *Omari v. Holder*, 562 F.3d 314, 318 (5th Cir. 2009), *overruled on other grounds by Santos-Zacaria v. Garland*, 598 U.S. 411, 428 (2023)). The Court finds that the remedy of a direct appeal was not available to Defendant because the order of deportation was entered in absentia. 8 C.F.R. § 1240.15. The Court further finds that the remedy of a motion to reopen was also not available to Defendant.

Defendant was unable to file a motion to reopen prior to his initial removal. He testified that he learned about the order of removal entered against him in absentia on August 27, 2009, when he was arrested by immigration officials in February of 2010. He was unable to speak with family or an immigration attorney after his arrest, other than a two-minute phone call with his sister. Therefore, between the time Defendant was arrested and the time he was deported, he had no real opportunity to contact an attorney or challenge the removal order through a motion to reopen. *See Villanueva-Diaz*, 634 F.3d at 849 (holding that a defendant exhausted administrative remedies when his "uncontroverted testimony was that he only became aware of the facts giving rise to his collateral challenge while being physically removed from the United States").

Furthermore, at the time Defendant was removed, the regulations prevented him from filing a motion to reopen. *See* 8 C.F.R. § 1003.2(d) ("A motion to reopen . . . shall not be made by or on behalf of a person who is the subject of . . . removal proceedings

subsequent to his or her departure from the United States."); *but see Garcia-Carias v. Holder*, 697 F.3d 257, 264 (5th Cir. 2012) (holding that BIA's departure bar conflicts with the statutory right to file a motion to reopen and is thus invalid). And the remedy of moving to reopen the prior removal order was not available to Defendant when he reentered the United States unlawfully after being deported. 8 C.F.R. § 1231(a)(5).

The *Martinez* case cited by the Government held that a failure to contest deportation, and numerous illegal reentries after deportation, foreclosed a finding that the initial removal proceedings constituted a gross miscarriage of justice. *Martinez*, 740 F.3d at 1043. But *Martinez* involved a collateral attack to a removal order raised in a petition for review, not in the § 1326(d) context. *Id.* at 1042; *see Ramirez-Molina v. Zigler*, 436 F.3d 508, 514 n.9 (noting that a collateral attack under § 1326(d) is different than a collateral attack on a removal order underlying a reinstatement order, which is civil in nature). Thus, *Martinez* is not applicable here.

Accordingly, the Court concludes that administrative remedies were not available to Defendant and thus the exhaustion of remedies requirement does not bar Defendant's challenge here.

### B. Opportunity for Judicial Review

Defendant must demonstrate that he was improperly deprived of the opportunity for judicial review of his removal order. Defendant argues that he was deprived of judicial review for much of the same reasons he could not exhaust his administrative remedies. D.E. 23, p. 6. Additionally, he states that the only judicial remedy would have been a

petition for review with the court of appeals. D.E. 32, p. 3 (citing 8 U.S.C. § 1252(a)(5)). However, that petition must be filed within 30 days of the date of the underlying removal order. *Id.* at p. 4 (citing 8 U.S.C. § 1252(b)(1)); *Luna-Garcia de Garcia v. Barr*, 921 F.3d 559, 564-65 (5th Cir. 2019). The Government argues that Defendant never moved to reopen the removal proceedings and did not seek any administrative remedy, judicial review, or habeas relief. D.E. 26, p. 5.

As noted above, Defendant could not directly appeal his in absentia order to the BIA; he did not receive notice of the removal order until he was arrested by immigration officials and thus had no opportunity to file a motion to reopen before he was removed; at the time he was removed, the regulations did not allow him to file a motion to reopen; and he could not later file a motion to reopen because he was present in the United States illegally.

Although a petition for review can be filed for removal orders entered in absentia under 8 U.S.C. § 1229a(b)(5)(D), the petition must be filed not later than 30 days after the date of the final order of removal. 8 U.S.C. § 1252(b)(1); *Luna-Garcia*, 921 F.3d at 563. Defendant did not learn of the removal order until well past this deadline. Thus, the Court concludes that Defendant was deprived of judicial review by the in absentia removal order.

### C. Fundamental Unfairness

Defendant must demonstrate that the entry of the removal order was fundamentally unfair. Defendant argues that because he was not served with notice of the hearing, he was

not given an opportunity to be heard. The Government argues that Defendant received notice and cites to the *Martinez* case which the Court addressed and distinguished above.

"Fundamental fairness is a question of procedure." *United States v. Lopez-Ortiz*, 313 F.3d 225, 230 (5th Cir. 2002). "[D]ue process requires only that an alien be provided notice of the charges against him, a hearing before an executive or administrative tribunal, and a fair opportunity to be heard." *United States v. Cordova-Soto*, 804 F.3d 714, 720 (5th Cir. 2015) (quoting *Benitez-Villafuerte*, 186 F.3d at 657).

The Court agrees with Defendant that the requirement of fundamental unfairness is clearly satisfied here. The Court has found that Defendant did not receive a notice to appear for the removal hearing at which he was ordered removed. Therefore, Defendant received no fair opportunity to be heard, and he has made the requisite showing for fundamental unfairness. *See United States v. Montano-Bentancourt*, 151 F. Supp. 2d 794, 796 (W.D. Tex. 2001) (finding that for a defendant who received no notice through no fault of his own, it was "unquestionable that the deportation hearing was fundamentally unfair").

**D. Actual Prejudice**

Prejudice under § 1326(d) "means there was a reasonable likelihood that but for the errors complained of the defendant would not have been deported." *Benitez-Villafuerte*, 186 F.3d at 659. If "despite the [alleged] errors, the proceeding 'could not have yielded a different result,' the deportation is valid for purposes of section 1326." *Id.*

Defendant's argument that he was prejudiced by the lack of notice centers on his pending application under NACARA. D.E. 23, p. 9; NACARA, Pub.L. No. 105-100, §

203(a), 111 Stat. 2160, 2196. He states that he was eligible for relief under NACARA, meeting the threshold requirements under 8 C.F.R. § 240.66(a). D.E. 23, p. 9. Considering that he sustained criminal convictions more than ten years after he arrived in the United States, he would then need to meet the requirements under § 240.66(c). *Id*. Because he was deported in absentia, the immigration judge found that he had abandoned any pending applications. Thus, he was prejudiced by not being able to pursue his pending application for relief. *Id*.

In response, the Government points to the avenues through which Defendant sought to prevent removal that proved unsuccessful, such as his applications for asylum and temporary protected status. D.E. 26, p. 7; D.E. 26-15, 26-16. Additionally, Defendant had two felony convictions. Thus, the Government argues that it is highly unlikely that Defendant would have prevailed at his removal hearing and so there is no actual prejudice. D.E. 26, p. 7.

The regulation, 8 C.F.R. § 240.66(c), states:

> (c) ***Aliens inadmissible or deportable on criminal or certain other grounds.*** To establish eligibility for special rule cancellation of removal under section 309(f)(1)(B) of IIRIRA, as amended by section 203 of NACARA, the alien must be described in § 240.61 and establish that:

> (1) The alien is inadmissible under section 212(a)(2) of the Act (relating to criminal activity), or deportable under paragraphs (a)(2) (other than section 237(a)(2)(A)(iii), relating to aggravated felony convictions), or (a)(3) of section 237 of the Act (relating to criminal activity, document fraud, and failure to register);

> (2) The alien has been physically present in the United States for a continuous period of not less than 10 years immediately following the commission of an act, or the assumption of a status constituting a ground for removal;
>
> (3) The alien has been a person of good moral character during the required period of continuous physical presence; and
>
> (4) The alien's removal from the United States would result in exceptional and extremely unusual hardship to the alien or to the alien's spouse, parent, or child, who is a United States citizen or an alien lawfully admitted for permanent residence.

It appears that Defendant had grounds for relief under NACARA. He is a citizen of El Salvador, first entered the United States in 1986, and applied for asylum in 1987, meeting the description set out in § 240.61. *See* 8 C.F.R. § 240.61 (including the following aliens: "(2) A Guatemalan or Salvadoran national who filed an application for asylum with the Service on or before April 1, 1990 . . . ."). Moreover, Defendant had been present in the United States for at least ten years prior to his criminal convictions. D.E. 23, p. 9; D.E. 26-16. And these convictions did not involve any aggravated felonies. D.E. 23, p. 2; D.E. 30, pp. 1-2. There is no evidence before the Court regarding the remaining requirements under NACARA.

If Defendant had been properly served with a notice to appear, he would have had an opportunity to present his case in support of his NACARA application. He has made a sufficient showing that he had grounds to support the application. Thus, the Court finds that Defendant was prejudiced by the Government's failure to serve him with a notice to

11 / 12

appear, and but for that failure, there was a reasonable likelihood that he would not have been deported.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant Victoriano Salmeron's motion to suppress and motion to dismiss (D.E. 23). Thus, the evidence of his prior removals is **SUPPRESSED** and the indictment (D.E. 6) is **DISMISSED**.

**ORDERED** on November 12, 2025.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE